UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN EGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NVR, INC. d/b/a, RYAN HOMES<br><br>Defendant. | Case No.   2:21-cv-87 |

**CLASS ACTION COMPLAINT**

Plaintiff, John Egan ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against NVR, Inc, d/b/a Ryan Homes ("Defendant") for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, averring as follows:

**INTRODUCTION**

1. Plaintiff brings this civil rights class action on behalf of all others similarly situated against Defendant for violations of Title III of the ADA and its implementing regulations in connection with inaccessible routes to entrances at various public accommodations owned, operated, controlled, and/or leased by Defendant ("Defendant's facilities").

2. Despite passage of the ADA more than thirty years ago, to this date, Defendant's properties are not fully accessible to persons with mobility disabilities. Defendant has discriminated, and continues to discriminate, against Plaintiff, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations at Defendant's sales offices because of

1

Defendant's inaccessible routes to its entrances.

3. Defendant has also failed to make reasonable modifications to its policies, practices, and procedures that are necessary to provide its goods, services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that its sales offices are accessible, Defendant subjects Plaintiff and those similarly situated to discrimination in violation of the ADA.

4. Defendant will continue discriminating unabated unless and until enjoined as Plaintiff requests. Accordingly, Plaintiff seeks: (i) declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory conduct, including an order directing Defendant to make alterations to its facilities to remove physical barriers to access and to make its facilities fully accessible to and independently usable by people with disabilities to the extent required by the ADA; (ii) an order requiring Defendant to make all reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; (iii) a declaration determining that Defendant's policies and practices of discrimination result in a violation of Title III of the ADA and its implementing regulations; (iv) an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and (v) any other such relief that this Court deems just and proper.

## THE ADA AND THE RIGHT OF ACCESS

5. The ADA was enacted over thirty years ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

6. Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

7. The ADA requires public accommodations to provide individuals with mobility disabilities full and equal enjoyment of the public accommodation's facilities. 42 U.S.C. § 12182(a).

8. The Department of Justice's *ADA Title III Technical Assistance Manual* makes clear that while model homes are generally not public accommodations, sales offices located in model homes are public accommodations.[1]

9. The ADA specifically lists access to public accommodations as the first priority that public accommodations should address in ensuring access: "First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces." 28. C.F.R. § 36.304.

10. The ADA and its implementing regulations define prohibited discrimination to include the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1).

---

[1] "Are model homes places of public accommodation? Generally, no. A model home does not fall under one of the 12 categories of places of public accommodation. If, however, the sales office for a residential housing development were located in a model home, the area used for the sales office would be considered a place of public accommodation." III-1.2000 Public accommodations, available at https://www.ada.gov/taman3.html.

11.     The ADA requires public accommodations to design and construct facilities to be readily accessible to, and independently usable by, individuals with disabilities – in other words, a facility's access and usability must be "ready" for an individual with a disability. 42 U.S.C. § 12183(a)(1).

12.     "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG'), which lay out the technical structural requirements of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006 (9th Cir. 2015).[2] The ADAAG, in relevant part, provides detailed guidance regarding accessible routes, including entrances, in public accommodations. *See* 36 C.F.R. § pt. 1191, App. D (the 2010 Standards), §§ 206, 303, 402, and 403; These requirements are designed to make it possible for a person with a mobility disability to independently access a business.

13.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

14.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

---

[2] The ADAAG is promulgated by the Department of Justice pursuant to 42 U.S.C. § 12186(b). There are two active ADAAGs, the 1991 ADAAG Standards ("1991 Standards") and the 2010 ADAAG Standards ("2010 Standards"). The 1991 Standards appear in 28 C.F.R. § pt. 36, App. D, and are available at: https://www.ada.gov/1991standards/adastd94-archive.pdf. The 2010 Standards appear in 36 C.F.R. § pt. 1191, App. D, and are available at: https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf.

**JURISDICTION AND VENUE**

15. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

16. Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

17. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

**PARTIES**

18. Plaintiff John Egan is, and at all times relevant hereto was, a resident of Pennsylvania.

19. Plaintiff, as a result of his disability, relies upon a wheelchair for mobility at all times, and is limited in the major life activities of walking and standing. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101, *et seq*.

20. Plaintiff is a consumer who wishes to access Defendant's goods and services.

21. Defendant NVR, Inc. is a publicly-traded corporation organized under Virginia law, and is headquartered at 11700 Plaza America Drive, Suite 500, Reston, Virginia. In 2019, the most recent year for which such information is available, it reported $1,370,982,000 in profits.[3]

22. Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

---

[3] See Defendant's Form 10-k for the year 2020, available at
https://www.sec.gov/ix?doc=/Archives/edgar/data/906163/000090616320000026/a201910-k.htm

## FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE

**I.      Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities.**

23. In early 2020, Plaintiff began searching for a new home.

24. Initially, Plaintiff considered purchasing a home in Defendant's Middlesex Crossing development, located in Valencia, PA.

25. Before visiting this development, Plaintiff called ahead and was assured that Defendant would be able to accommodate him.

26. On arriving at Middlesex Crossing, Plaintiff learned that there was no accessible route to the entrance of the development's sales office ("Middlesex Sales Office").

27. The Middlesex Sales Office was located in the garage of one of Defendant's model homes. The route to the office passed through the model home's front door, which was obstructed by steps. Plaintiff was told that the garage door was not operable.

28. Plaintiff met with Defendant's agent outside, in the rain. He left feeling angry and humiliated.

29. Despite his experience at the Middlesex Sales Office, Plaintiff later visited Defendant's Twin Oaks Development, at 102 Twin Oaks Drive, in Sarver, Pennsylvania.[4]

30. The Twin Oaks development's sales office ("Twin Oaks Sales Office") was also located in a converted garage attached to a model home.

31. Like the Middlesex Sales Office, the Twin Oaks Sales Office was not wheelchair accessible. The garage door was sealed, and the route to the office was obstructed by steps.

---

[4] Plaintiff decided to continue negotiating with and ultimately purchase a house from Defendant, despite this and subsequent incidents, because few developers in the area offer single-level homes at a comparable price. This decision should not be interpreted as minimizing his frustration with this situation.

32. Unlike Defendant's ambulatory customers, Plaintiff was unable to enter the Twin Oaks Sales Office, and instead met with a sales representative on the sidewalk.

33. Plaintiff brought this problem to the attention of Defendant's Division Manager Pete Robertson. Mr. Robertson replied via text message *"Our corporate policy meets ADA requirements by having accessible models within a reasonable distance."*[5] Plaintiff has been told that future meetings will be held in Defendant's Weatherburn Heights development in Mars, PA, approximately 12 miles from the Twin Oaks development.

34. Although Plaintiff has expressed his dissatisfaction with not being able to access the sales office where his home is being built, Defendant has taken no steps to make the Twin Oaks Sales Office accessible to Plaintiff.

35. Plaintiff's desire for an accessible sales office is neither outlandish nor unreasonable. One of Defendant's local competitors, Dan Ryan Builders, also locates its sales offices in the garages of its model homes. Rather than segregating wheelchair users by requiring them to use a distant office, Dan Ryan Builders constructs an entrance in the space where the garage door will ultimately be located, with no obstructions blocking the route to the entrance. See Figure 1.

---

[5] Neither Plaintiff nor his counsel are aware of any support for this proposition and do not believe it to be an accurate statement of the law.



Figure 1

36. Alternately, Defendant could make its sales offices accessible by simply including one of its standard upgrades, a side garage entrance on an accessible route. Such a solution is well within Defendant's capabilities as one of the largest residential developers in the United States. Indeed, given that it designs and builds its own sales offices, Defendant is uncommonly well situated to remedy and prevent these problems, relative to other owners and operators of public accommodations.

37. As a result of Defendant's non-compliance with the ADA, Plaintiff's ability to access and safely use Defendant's facilities has been significantly impeded.

38. Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

39. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of his rights under the ADA.

40. As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

41. Even after the purchase of his house is complete, Plaintiff intends to patronize Defendant's facilities in the future and utilize Defendant's services, including his one-year wall-to-wall home warranty and ten-year foundation warranty. However, Defendant's inaccessible facilities have, and continue to, deter Plaintiff from patronizing Defendant's facilities.

## II. Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to Defendant's Facilities.

42. Defendant is engaged in the ownership, operation, management, and development of home developments throughout the United States.

43. As the owner, operator, and/or manager of its properties, Defendant employs centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of its facilities.

44. To date, Defendant's centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing and constructing facilities so that they are not readily accessible and usable.

45. On Plaintiff's behalf, investigators examined multiple housing developments built, owned, controlled, and/or operated by Defendant. They found that no routes to the sales offices at the following developments that could be navigated without traversing steps.

   a. 1000 Danason Drive, Cheswick, PA 15024;

    b. 1004 Black Sands Drive, Penn Township, PA 15644;

    c. 102 Twin Oaks Drive, Sarver, PA 16055;

    d. 1040 Gregg Station Rd., Collier Township, PA 15071;

    e. 128 Red Pine Drive, Kennedy Township, PA 15108;

    f. 201 Dior Drive, Zelienople, PA 16063;

    g. 3005 Humbolt Place, Valencia, PA 16059;

    h. 4001 Crown Drive, South Park, PA 15102;

    i. 468 White Tail Meadows Trail, Adams Township, PA 16046;

    j. 800 Theda-Dori Street, Cranberry Township, PA 16066; and

    k. 2001 Eagle Ridge Dr, Mars, PA 16059.

46. The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendant's facilities, and the fact that each of these facilities deny access by way of inaccessible routes, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, caused by Defendant's systemic disregard for the rights of individuals with disabilities.

47. Defendant's systemic access violations demonstrate that Defendant employs policies and practices that fail to design and construct its facilities so that they are readily accessible and usable.

48. As evidenced by the widespread inaccessibility of Defendant's sales offices, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in

Defendant's facilities. Even if all of Defendant's current sales offices are remediated, it will open new sales offices throughout the country every year.

49. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendant's network of facilities.

## CLASS ALLEGATIONS

50. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure individually and on behalf of the following classes:

(1) All persons with qualified mobility disabilities who, due to Defendant's failure to comply with the ADA's accessible route requirements, have experienced or will experience denial of access injuries that occur at sales facilities at all locations within Pennsylvania for which Defendant owns and/or controls accessible routes.

(2) All persons with qualified mobility disabilities who, due to Defendant's failure to comply with the ADA's accessible route requirements, have experienced or will experience route-related injuries that occur at the sales facilities at all other locations within the United States for which Defendant owns and/or controls the sales facilities.

51. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

52. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

53. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been

11

and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services and facilities due to the discriminatory conduct described above.

54. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

55. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION

### Violations of 42 U.S.C. §§ 12181, *et seq.*

56. Defendant has failed, and continues to fail, to provide individuals with mobility disabilities with full and equal enjoyment of its facilities.

57. Defendant has discriminated against Plaintiff and the putative classes in that Defendant has failed to make Defendant's facilities fully and readily accessible to, and independently usable by, individuals with mobility disabilities in violation of 42 U.S.C. § 12183(a)(2) and the ADAAG, as described above.

58. The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals with mobility disabilities. 42 U.S.C. § 12183(a).

Case 2:21-cv-00087-CRE   Document 1   Filed 01/20/21   Page 13 of 15

59. Defendant has possessed sufficient expertise, financial resources, control, and authority to remove the architectural barriers and modify its sales facilities to comply with the ADAAG, but Defendant has not removed such impediments and has not modified its accessible routes. Instead, Defendant has intentionally maintained its sales offices to be inaccessible and has refrained from making alterations to comply with the ADAAG.

60. Defendant's repeated and systemic failures to design, construct, and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

61. By failing to provide accessible sales facilities, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination by failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

62. Defendant's policies, practices, and/or procedures, or Defendant's failure to modify policies, practices, and procedures, (1) deny individuals with mobility disabilities full and equal access to all of the goods, services, privileges, advantages, and accommodations that make up Defendant's sales offices; (2) ensure barriers within Defendant's facilities persist indefinitely and remain unremoved; and (3) ensure Defendant's facilities do not comply with ADA building design regulations and standards.

63. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of Defendant's goods, services, facilities, privileges, advantages, and accommodations.

64. Defendant's ongoing and continuing violations of Title III have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiff and those similarly situated.

65. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs: (i) Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) that Defendant changes its policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing Plaintiff's counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: January 20, 2021   Respectfully submitted,

*/s/ R. Bruce Carlson*
R. Bruce Carlson
Nicholas Colella
**Carlson Lynch, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243 (Tel.)
bcarlson@carlsonlynch.com
ncolella@carlsonlynch.com